IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DR. ROBERT GERBER, on behalf of plaintiff and the class members defined herein, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| MEDSOLUTIONS, INC., and CARECORE NATIONAL, LLC both doing business as EVICORE HEALTHCARE, and JOHN DOES 1-10, | ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT – CLASS ACTION**

**MATTERS COMMON TO MULTIPLE COUNTS**

**INTRODUCTION**

1. Plaintiff Dr. Robert Gerber brings this action to secure redress for the actions of defendants MedSolutions, Inc and Carecore National, LLC, both doing business as eviCore Healthcare, in sending or causing the sending of unsolicited advertisements to telephone facsimile machines in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"), and the common law.

2. The TCPA expressly prohibits unsolicited fax advertising. Unsolicited fax advertising damages the recipients. The recipient is deprived of its paper and ink or toner and the use of its fax machine. The recipient also wastes valuable time it would have spent on something else. Unsolicited faxes prevent fax machines from receiving and sending authorized faxes, cause

1

wear and tear on fax machines, and require labor to attempt to identify the source and purpose of the unsolicited faxes.

## PARTIES

3. Plaintiff Dr. Robert Gerber is an individual with offices at 800 Austin Street, West Tower, Suite 508, Evanston, Illinois 60202, where he maintains telephone facsimile equipment.

4. Defendant MedSolutions, Inc., is a Tennessee corporation with a principal place of business at 400 Buckwalter Place Blvd., Bluffton, South Carolina 29910-5150. Its registered agent and office is Corporation Service Company, 1703 Laurel Street Columbia, South Carolina 29201.

5. Defendant CareCore National, LLC, is a New York limited liability company with a principal place of business at 400 Buckwalter Place Blvd., Bluffton, South Carolina 29910-5150. Its registered agent and office is Laurie B. Johnson at that address.

6. Defendants MedSolutions, Inc., and CareCore National, LLC are under common ownership and control. They both do business as eviCore Healthcare, in such a manner as to make it impossible to distinguish between them. As a result of holding themselves out to the public as a single entity, both are responsible for acts committed under the name of "eviCore Healthcare."

7. John Does 1-10 are other natural or artificial persons that were involved in the sending of the facsimile advertisements described below. Plaintiff does not know who they are.

## JURISDICTION AND VENUE

8. This Court has jurisdiction under 28 U.S.C. §§1331 and 1367. *Mims v. Arrow*

2

*Financial Services, LLC*, 132 S. Ct. 740, 751-53 (2012); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005).

9. Personal jurisdiction exists under 735 ILCS 5/2-209, in that defendants:

 a. Have committed tortious acts in Illinois by causing the transmission of unlawful communications into the state.

 b. Have transacted business in Illinois.

10. Venue in this District is proper for the same reason.

## FACTS

11. On July 17, 2017, Dr. Robert Gerber, received the unsolicited fax advertisement attached as <u>Exhibit A</u> on its facsimile machine.

12. Discovery may reveal the transmission of additional faxes as well.

13. Defendants, doing business as "eviCore Healthcare," are responsible for sending or causing the sending of the fax.

14. The fax makes known to medical offices the commercial availability of two "eviCore Healthcare" web portals. It invites medical offices to make use of the portals. It also invites participation in a webinar at which the benefits of the portals were to be promoted.

15. Defendants, doing business as "eviCore Healthcare," are engaged in the business of providing healthcare management services to insurers, benefit plans, and others that pay for healthcare (the "payors"): "eviCore is a company committed to advancing healthcare management through intelligent care – and enabling better outcomes for patients, providers, and plans." (https://www.evicore.com/pages/about.aspx)

16. Defendants state on their (single) website: "eviCore has its roots firmly in

healthcare innovation and the advancement of medical benefits management. The two companies from which we were formed, CareCore and MedSolutions, each contributed considerably to the evolution of this critical area of the healthcare system, from the early 1990s on . . . . We are a national leader in integrated, innovative intelligent care management solutions for managed care and risk-bearing providers, delivering custom, calibrated strategies and services that reduce and control costs, and enable our clients to ensure higher quality, intelligent care for patients." (https://www.evicore.com/pages/about.aspx)

17. Defendants derive commercial advantage from inducing medical offices such as plaintiff to make use of their web portals and systems.

18. In exchange, defendants claim (https://www.evicore.com/pages/approach.aspx) that medical offices such as plaintiff are enable to provide better care: "we deploy an evidence-based, patient-centric specialty benefits management approach that yields genuinely customized Intelligent Care Management solutions for our clients, offering the right procedure, at the right place, at the right time."

19. However, the amount of money paid by the payors to the medical offices that use the portals is diminished. "Together, these intelligent care management capabilities drive the provision of the right answers at the right time to the right people. We are realizing our mission of aligning and maximizing quality, cost savings, and operational efficiency – for everyone." (https://www.evicore.com/pages/approach.aspx)

20. The medical offices thus indirectly pay for their participation in the services offered in the fax and the webinars.

21. Defendants thus derived economic benefit from the sending of the faxes.

4

22.     Defendants either negligently or wilfully violated the rights of plaintiff and other recipients in sending the faxes.

23.     Plaintiff had no prior relationship with defendants and had not authorized the sending of fax advertisements to plaintiff.

24.     On information and belief, the faxes attached hereto were sent as part of a mass broadcasting of faxes.

25.     The fax did not contain an "opt out" notice that complies with 47 U.S.C. §227.

26.     On information and belief, defendants have transmitted similar unsolicited fax advertisements to at least 40 other persons in Illinois.

27.     There is no reasonable means for plaintiff or other recipients of defendants' unsolicited advertising faxes to avoid receiving illegal faxes. Fax machines must be left on and ready to receive the urgent communications authorized by their owners.

## COUNT I – TCPA

28.     Plaintiff incorporates ¶¶ 1-27.

29.     The TCPA makes unlawful the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine ..." 47 U.S.C. §227(b)(1)(C).

30.     The TCPA, 47 U.S.C. §227(b)(3), provides:

> **Private right of action.**
>
> **A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State–**
>
> > **(A)  an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,**

> **(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or**
>
> **(C) both such actions.**
>
> **If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.**

31. Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result. Furthermore, plaintiff's statutory right of privacy was invaded.

32. Plaintiff and each class member is entitled to statutory damages.

33. Defendants violated the TCPA even if their actions were only negligent.

34. Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

35. Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiff brings this claim on behalf of a class, consisting of (a) all persons with fax numbers (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. §1658), (c) were sent faxes by or on behalf of defendants, promoting their goods or services (d) with respect to which defendants do not have evidence of consent or an established business relationship prior to sending the fax.

36. The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the class.

37. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions

include:

  a. Whether defendants engaged in a pattern of sending unsolicited fax advertisements;

  b. The manner in which defendants compiled or obtained its list of fax numbers; and

  c. Whether defendants thereby violated the TCPA.

38. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

39. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

40. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

41. Numerous courts have certified class actions under the TCPA. *Holtzman v. Turza,* No. 08 C 2014, 2009 WL 3334909 (N.D.Ill. Oct. 14, 2009), *aff'd in part, rev'd in part, vacated in part,* 728 F.3d 682 (7th Cir. 2013); *Ballard RN Center, Inc. v. Kohll's Pharmacy and Homecare, Inc.* 2015 IL 118644, 48 N.E.3d 1060; *American Copper & Brass, Inc. v. Lake City Indus. Products, Inc.*, 757 F.3d 540, 544 (6th Cir. 2014); *In re Sandusky Wellness Center, LLC*, 570 Fed.Appx. 437, 437 (6th Cir. 2014); *Sandusky Wellness Center, LLC v. Medtox Scientific,*

7

*Inc.*, 821 F.3d 992, 998 (8th Cir. 2016); *Sadowski v. Med1 Online, LLC,* No. 07 C 2973, 2008 WL 2224892 (N.D.Ill. May 27, 2008); *CE Design Ltd. v. Cy's Crabhouse North, Inc.,* 259 F.R.D. 135 (N.D.Ill. 2009); *Targin Sign Systems, Inc. v. Preferred Chiropractic Center, Ltd.,* 679 F.Supp.2d 894 (N.D.Ill. 2010); *Garrett v. Ragle Dental Laboratory, Inc.,* No. 10 C 1315, 2010 WL 4074379 (N.D.Ill. Oct. 12, 2010); *Hinman v. M&M Rental Center, Inc.,* 545 F.Supp.2d 802 (N.D.Ill. 2008); *Clearbrook v. Rooflifters, LLC,* No. 08 C 3276, 2010 U.S.Dist. LEXIS 72902 (N.D.Ill. July 20, 2010) (Cox, M.J.); *G.M. Sign, Inc. v. Group C Communications, Inc.,* No. 08-cv-4521, 2010 WL 744262 (N.D.Ill. Feb. 25, 2010); *Kavu, Inc. v. Omnipak Corp.,* 246 F.R.D. 642 (W.D.Wash. 2007); *Display South, Inc. v. Express Computer Supply, Inc.,* 961 So.2d 451, 455 (La.App. 2007); *Display South, Inc. v. Graphics House Sports Promotions, Inc.,* 992 So.2d 510 (La.App. 2008); *Lampkin v. GGH, Inc.,* 146 P.3d 847 (Ok.App. 2006); *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.,* 203 Ariz. 94, 50 P.3d 844 (2002); *Core Funding Group, LLC v. Young,* 792 N.E.2d 547 (Ind.App. 2003); *Critchfield Physical Therapy v. Taranto Group, Inc.,* 293 Kan. 285, 263 P.3d 767 (2011); *Karen S. Little, L.L.C. v. Drury Inns, Inc.,* 306 S.W.3d 577 (Mo.App. 2010); *Lindsay Transmission, LLC v. Office Depot, Inc.,* No. 4:12-CV-221 (CEJ), 2013 WL 275568 (E.D.Mo. Feb. 24, 2013).

42. Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

a. Actual damages;

b. Statutory damages;

      c.      An injunction against the further transmission of unsolicited fax advertising;

      d.      Costs of suit;

      e.      Such other or further relief as the Court deems just and proper.

## COUNT II – ILLINOIS CONSUMER FRAUD ACT

43. Plaintiff incorporates ¶¶ 1-27.

44. Defendants engaged in unfair acts and practices, in violation of ICFA § 2, 815 ILCS 505/2, by sending unsolicited fax advertising to plaintiff and others.

45. Unsolicited fax advertising is contrary to the TCPA and also Illinois law. 720 ILCS 5/26-3(b) makes it a petty offense to transmit unsolicited fax advertisements to Illinois residents.

46. Defendants engaged in an unfair practice and an unfair method of competition by engaging in conduct that is contrary to public policy, unscrupulous, and caused injury to recipients of their advertising.

47. Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result.

48. Defendants engaged in such conduct in the course of trade and commerce.

49. Defendants' conduct caused recipients of their advertising to bear the cost thereof. This gave defendants an unfair competitive advantage over businesses that advertise lawfully, such as by direct mail. For example, an advertising campaign targeting one million recipients would cost $500,000 if sent by U.S. mail but only $20,000 if done by fax broadcasting. The reason is that instead of spending $480,000 on printing and mailing his ad, the fax broadcaster

misappropriates the recipients' paper and ink. "Receiving a junk fax is like getting junk mail with the postage due". Remarks of Cong. Edward Markey, 135 Cong Rec E 2549, Tuesday, July 18, 1989, 101st Cong. 1st Sess.

50. Defendants' shifting of advertising costs to plaintiff and the class members in this manner makes such practice unfair. In addition, defendants' conduct was contrary to public policy, as established by the TCPA and Illinois statutory and common law.

51. Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

52. Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date three years prior to the filing of this action, (c) were sent faxes by or on behalf of defendants, promoting their goods or services (d) with respect to which defendants do not have evidence of consent or an established business relationship prior to sending the fax.

53. The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the class.

54. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

    a. Whether defendants engaged in a pattern of sending unsolicited fax advertisements; and

    b. Whether defendants thereby engaged in unfair acts and practices, in violation of the ICFA.

55. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

56. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

57. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

58. Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

    a. Appropriate damages;

    b. An injunction against the further transmission of unsolicited fax advertising;

    c. Attorney's fees, litigation expenses and costs of suit;

    d. Such other or further relief as the Court deems just and proper.

## COUNT III – CONVERSION

59. Plaintiff incorporates ¶¶ 1-27.

60. By sending plaintiff and the class members unsolicited faxes, defendants

converted to their own use ink or toner and paper belonging to plaintiff and the class members.

61. Immediately prior to the sending of the unsolicited faxes, plaintiff and the class members owned and had an unqualified and immediate right to the possession of the paper and ink or toner used to print the faxes.

62. By sending the unsolicited faxes, defendants appropriated to their own use the paper and ink or toner used to print the faxes and used them in such manner as to make them unusable. Such appropriation was wrongful and without authorization.

63. Defendants knew or should have known that such appropriation of the paper and ink or toner was wrongful and without authorization.

64. Plaintiff and the class members were deprived of the paper and ink or toner, which could no longer be used for any other purpose. Plaintiff and each class member thereby suffered damages as a result of receipt of the unsolicited faxes.

65. Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

66. Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date five years prior to the filing of this action, (c) were sent faxes by or on behalf of defendants, promoting their goods or services (d) with respect to which defendants do not have evidence of consent or an established business relationship prior to sending the fax.

67. The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the class.

68. There are questions of law and fact common to the class that predominate over

any questions affecting only individual class members. The predominant common questions include:

    a.    Whether defendants engaged in a pattern of sending unsolicited fax advertisements; and

    b.    Whether defendants thereby converted the property of plaintiff.

69.    Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

70.    Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

71.    A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

72.    Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

    a.    Appropriate damages;

    b.    An injunction against the further transmission of unsolicited fax advertising;

c.      Costs of suit;

            d.      Such other or further relief as the Court deems just and proper.

## COUNT IV – TRESPASS TO CHATTELS

    73.     Plaintiff incorporates ¶¶ 1-27.

    74.     Plaintiff and the class members were entitled to possession of the equipment they used to receive faxes.

    75.     Defendants' sending plaintiff and the class members unsolicited faxes interfered with their use of the receiving equipment and constitutes a trespass to such equipment. *Chair King v. Houston Cellular*, 95cv1066, 1995 WL 1693093 at *2 (S.D. Tex. Nov. 7, 1995) (denying a motion to dismiss with respect to plaintiff's trespass to chattels claim for unsolicited faxes), vacated on jurisdictional grounds 131 F.3d 507 (5th Cir. 1997).

    76.     Defendants acted either intentionally or negligently in engaging in such conduct.

    77.     Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes.

    78.     Defendants should be enjoined from continuing trespasses.

## CLASS ALLEGATIONS

    79.     Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date five years prior to the filing of this action, (c) were sent faxes by or on behalf of defendants, promoting their goods or services (d) with respect to which defendants do not have evidence of consent or an established business relationship prior to sending the fax.

    80.     The class is so numerous that joinder of all members is impractical. Plaintiff

14

alleges on information and belief that there are more than 40 members of the class.

81. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

  a. Whether defendants engaged in a pattern of sending unsolicited fax advertisements; and

  b. Whether defendants thereby committed a trespass to chattels.

82. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

83. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

84. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

85. Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

  a. Appropriate damages;

    b.      An injunction against the further transmission of unsolicited fax advertising;

    c.      Costs of suit;

    d.      Such other or further relief as the Court deems just and proper.

s/ Daniel A. Edelman  
Daniel A. Edelman

Daniel A. Edelman  
Cathleen M. Combs  
James O. Latturner  
Julie Clark  
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC  
20 S. Clark Street, Suite 1500  
Chicago, Illinois 60603  
(312) 739-4200  
(312) 419-0379 (FAX)

## **NOTICE OF LIEN AND ASSIGNMENT**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

                                                s/ Daniel A. Edelman
                                                Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## DOCUMENT PRESERVATION DEMAND

      Plaintiff hereby demands that defendants take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendants are aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendants request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendants.

                                                    s/ Daniel A. Edelman
                                                    Daniel A. Edelman