**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**Dr. Robert Gerber**, on behalf of plaintiff and
the class members defined herein,

        Plaintiff,

    v.

**Medsolutions, Inc.**, and **Carecore National,**
**LLC** both d/b/a **Evicore Healthcare**, *et al.*

        Defendants.

Hon. Robert W. Gettleman

Case No. 17 cv 5553

**DEFENDANTS' MEMORANDUM IN**
**SUPPORT OF THEIR MOTION TO DISMISS**

Defendants Medsolutions, Inc. and Carecore National, LLC (collectively

"Defendants"), move this Court, under Fed. R. Civ. Proc. 12(b)(6), to dismiss the

Complaint ("Complaint") of Plaintiff Dr. Robert Gerber ("Plaintiff") with prejudice.

**I.     INTRODUCTION**

In this lawsuit under the Telephone Consumer Protection Act ("TCPA"), 47

U.S.C. § 227 *et seq.*, Plaintiff complains he received a two-page fax from Defendants.

Plaintiff, a physician, alleges that Defendants "provid[e] healthcare management

services to insurers, benefit plans, and others that pay for healthcare." But Plaintiff does

not and cannot allege that Defendants sell or seek to sell such "healthcare management

services" to individual physicians, much less to Plaintiff himself. The fax merely

provides physicians with a schedule of upcoming orientation sessions to learn how to

use Defendants' web portal if those physicians – who accept coverage from one of

Defendants' insurer-customers – wish to "initiate [patient] authorizations" or "check the status of an existing case" online.

A fax is not actionable under the TCPA unless it constitutes an "unsolicited advertisement," defined as "material advertising the commercial availability or quality of any property, goods or services . . . ."  47 U.S.C. § 227(a)(5).  Nothing within Exhibit A to the Complaint could reasonably be construed as an advertisement by or on behalf of Defendants to Plaintiff.  On its face, the fax was intended to reach a closed group of physicians with whom Defendants' insurer-customers had an existing relationship; an outsider physician who did not accept coverage from such insurers would not have access to the web portal and have no use for it.  And because Defendants admittedly do not sell the web portal to individual physicians like Plaintiff, the services in the fax have no "commercial availability" to Plaintiff.  As this fax falls outside of the scope of the TCPA, Plaintiff's TCPA claim is deficient as a matter of law.

For similar reasons, Plaintiff's claim under the Illinois Consumer Fraud Act ("ICFA") and common law claims for conversion and trespass likewise fail.  The fax does not contain any advertising that would support:  (1) an "unfair act or practice" allegation under the ICFA; (2) a "wrongful" assumption of control – or indeed any control – constituting conversion; or (3) unauthorized "intermeddling" with Plaintiff's property.  Further, all of these claims require Plaintiff to have sustained a "substantial" injury under Illinois' *de minimis non curat lex* doctrine.  As several Illinois district courts have already held, lost "ink or toner" and two pieces of paper do not constitute a "substantial" injury for purposes of that doctrine, even in putative class actions.

2

Because the Court may determine as a matter of law that the alleged fax is not an unlawful "advertisement" and that the alleged injury is *de minimis*, Plaintiff's complaint should be dismissed in its entirety, without leave to amend.

## II.      FACTUAL BACKGROUND

Plaintiff alleges that Defendants are "engaged in the business of providing healthcare management services to insurers, benefit plans, and others that pay for healthcare (the 'payors')." Complaint ¶ 15. Quoting Defendants' website, Plaintiff alleges that Defendants market themselves as "committed to advancing healthcare management" and providing "management solutions for managed care and risk-bearing providers, delivering custom, calibrated strategies and services that reduce and control costs, and enable our clients to ensure higher quality, intelligent care for patients." *Id*. ¶ 16 (quoting https://www.evicore.com/pages/about.aspx). In short, as the Complaint itself makes clear, Defendants' business is providing healthcare management services to insurers and health plans. The Complaint does not allege – and cannot allege – that Defendants conduct any direct business with individual doctors. The best Plaintiff can allege is that such doctors somehow "indirectly pay" for their participation in Defendants' training sessions.

The Complaint alleges that Defendants sent an unsolicited fax (the "Fax") to Plaintiff. Complaint ¶¶ 11, 13 & Ex. A thereto. Plaintiff pleads no facts that even seek to establish that the fax is an unsolicited advertisement. Instead, from the face of Exhibit A, it is apparent that the Fax relates to an ongoing relationship between Defendants and health insurers that insure patients who may be treated by physicians

such as Plaintiff. Entitled "eviCore healthcare Web Portal Training Online Orientation Session Invitation," the Fax notes the utility of initiating patient authorizations and checking the status of existing cases via Defendants' web portal, explaining that "Our self-service web portal is available 24/7, allowing you the opportunity to initiate new requests and review case information at your convenience." Complaint ¶ 11 & Ex A. The Fax lists a schedule of orientation sessions for using Defendants' web portal and explains how to register for a session. The Fax further explains that if a medical provider cannot participate in a scheduled session, they may call or email Defendants' Web Support team. *Id.*

## III.  LEGAL STANDARD

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* Where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Moreover, the court may properly consider documents referenced in – or even entirely omitted from – the complaint on a motion to dismiss without converting the motion to summary judgment. *Tierney v. Vahle*, 304 F.3d 734, 738-39 (7th Cir. 2002).

IV.     **ARGUMENT**

A.      **Plaintiff Fails To State A Claim Under The TCPA Because The Alleged Fax Is Not An "Advertisement"**

Plaintiff cannot state a claim for violation of the TCPA because the faxed schedule of orientation sessions is not an "advertisement" and therefore not subject to the statute.  The TCPA only prohibits unsolicited fax "advertisements."  *See* 47 U.S.C. § 227(b)(1)(C).  "Advertisement" is defined by the TCPA as "any material advertising the commercial availability or quality of any property, goods, or services[.]"  47 U.S.C. §227(a)(4).  Moreover, the FCC has clarified that faxes are only subject to the TCPA if their "primary purpose" is to "promote a commercial product or service" in an effort to generate "new or additional business."  *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 and Junk Fax Prevention Act of 2005*, CG Docket Nos. 02-0278 and 05-338, Final Rule, FCC06-42, 71 Fed. Reg. 25967-01, 25972-73 (May 3, 2006) ("FCC Order") at 25973.

The faxed schedule is not an advertisement because it was not sent in the hope of generating business from Plaintiff.  Indeed, Plaintiff pointedly alleges that Defendants are "engaged in the business of providing healthcare management services to insurers, benefit plans, and others that pay for healthcare (the '**payors**')" – i.e., not to individual physicians.  Complaint ¶ 15 (emphasis added).  As the Fax itself demonstrates, the sessions are designed to train specific physicians – those who accept coverage from Defendants' health insurers-customers – on how to initiate and manage authorizations online.  Plaintiff does not allege – nor can he allege – that individual physicians like

5

himself would ever purchase any service from Defendants as a result of their participation in such an orientation session.

Accordingly, the Fax is a far cry from the sort of indiscriminate, open-ended invitation for randomly-selected recipients to purchase a business' services. *Cf. Brodsky v. HumanaDental Insurance Co.*, Civil Action No. 10-3233, 2014 WL 2780089 (N.D. Ill. June 12, 2014) (insurer sent faxes to insurance wholesaler encouraging it to include defendant's plans in offered products); *N. Suburban Chiropractic Clinic, Ltd. v. Merc & Co., Inc.*, No. 13 C 3113, 2013 WL 5170754, at *4 (N.D. Ill. 2013) (fax promoting seminar was pretext for marketing goods and services); *Green v. Time Ins. Co.*, 629 F. Supp. 2d 834, 834-35 (N.D. Ill. 2009) (fax promoted insurance agent contract that provided the recipient, among other things, with "opportunity for bonus programs & rewards").

Courts agree that faxes sent as services to third parties, as opposed to current or potential customers, are not advertisements. *See, e.g., Sandusky Wellness Center, LLC v. Medco Health Solutions, Inc.*, 788 F.3d 218 (6th Cir. 2015) (affirming summary judgment in favor of defendant pharmacy benefit manager, who sent faxes to healthcare provider identifying plan-preferred medications as service to plaintiff's patients); *Phillip Long Dang, D.C., P.C. v. XLHealth Corp.*, Case No. 1:09-cv-1076, 2011 WL 553826, at *4 (N.D. Ga. Feb. 7, 2011) (fax inviting doctors to seminar regarding defendant's billing practices, to learn how to submit claims and speed up reimbursement process, was not advertisement); *Orrington v. Scion Dental, Inc.*, No. 17-CV-00884, 2017 WL 2880900, at *4 (N.D. Ill. July 6, 2017) (granting motion to dismiss where fax was sought to inform recipients regarding updates to processes via a free webinar); *Physicians HealthSource,*

6

*Inc. v. MultiPlan Servs., Corp.*, No. CIV.A. 12-11693-GAO, 2013 WL 5299134, at *2 (D.

Mass. Sept. 18, 2013) (fax by company that facilitates relationships between health care

provider networks and patients to plaintiff health care provider "advising him that he

had access to a population of patients within the network by virtue of his participation

in the MultiPlan Network" was not unsolicited advertisement but "merely appris[ed]

[the doctor] of features of an account to which he already has access").

The District Court of Colorado's recent decision in *Absolute Health Center, Inc. v.*

*Multiplan, Inc.*, Case No. 15-cv-01624-RM-NYW, 2016 WL 7868822 (D. Colo. Sept. 23,

2016), is particularly instructive. There, a healthcare provider sued a preferred provider

organization network whose contracted "payers" (including insurers) authorized the

defendant to perform claim negotiation services with out-of-network providers. *Id.* at

*2. The defendant sent faxes to the plaintiff, an out-of-network medical provider, on

behalf of contracted payers regarding certain claims. *Id.* The district court concluded

that the faxes were not "advertisements" because the services were being performed on

behalf of a third party (i.e., the payers), and were therefore not being advertised to the

plaintiff provider. *Id.* at *5-6. It was thus "impossible for defendant to be advertising an

available service, as required by 47 U.S.C. § 227(a)(5) . . . when that service is patently

not available, given that it is already being provided for the [r]elevant [p]ayer." *Id.* at

*6. The court rejected the notion that any indirect financial benefit transformed the

faxes into advertisements: "The fact that some element of commerciality is involved in

the disputed facsimiles is not what the TCPA prohibits; it is, instead the advertising of a

commercially available product or service." *Id.*

7

Like the defendant in *Absolute Health*, Defendants are not advertising any commercial services to Plaintiff.  Per the Complaint's allegations, Defendants' services are used by the "payors" – i.e., the insurers – and are not available to individual physicians themselves.  That there may be some commercial aspect to Defendants' relationship with its insurer-customers does not violate the TCPA.  *See id.*; *St. Louis Heart Center, Inc. v. Caremark, L.L.C*, No. 4:12CV2151 TCM, 2013 WL 9988795, at *2 (E.D. Mo. Apr. 19, 2013) ("ancillary commercial benefit" to sender does render fax "advertisement").  The Court should dismiss the TCPA claims.[1]

### B.    Plaintiff Also Fails To State A Claim Under The TCPA For The Independent Reasons That The Fax Was "Transactional" And "Informational"

Plaintiff's TCPA claims also fail for the independent reasons that the Fax is both a "transactional" and "informational" communication as those terms are defined by the FCC.  *See* FCC Order at 25972-73.  Such "transactional" or "informational" messages are expressly authorized by the FCC, the agency responsible for interpreting and implementing the TCPA.  47 U.S.C. § 151.

### 1.    The Fax Was A "Transactional" Communication

On its face, the Fax was designed to "facilitate, complete, or confirm" existing transactions between Defendants and their insurer-customers.  Such "transactional" messages that "relate specifically to existing accounts and ongoing transactions" and that do not seek "new or additional business" are not unsolicited advertisements as a

---

[1] Since the Fax was not an advertisement, no opt out notice was required to be included in the Fax despite Plaintiff's allegation in ¶ 25 of the Complaint.  *See* 47 U.S.C. § 227(b)(1)(c)(iii); 47 CFR 64.1200(a)(4)(iii).

matter of law. *See* FCC Order at 25972-73; *Grind Lap Servs., Inc. v. UBM LLC*, Civil Action No. 14-6448, 2015 WL 6955484, at *3 (N.D. Ill. Nov. 10, 2015), *appeal dismissed* (Mar. 17, 2016) (faxed subscription renewal request was "transactional" message).

Importantly, a pre-existing relationship between the sender and recipient is not necessary for a fax to be "transactional" under the FCC's definition. The FCC Order makes clear that the essential component of all "transactional" communications is simply their relation to "existing accounts and ongoing transactions. [By contrast] [m]essages regarding new or additional business . . . [are] covered by the prohibition." *Id.* at 25973. Accordingly, the FCC's examples of "transactional" messages include messages sent to third-party intermediaries who facilitate existing transactions. *Id.* For example, "a mortgage rate sheet sent to a broker or other intermediary or a price list sent from a wholesaler to a distributor (*e.g.*, food wholesaler to a grocery store) for the purpose of communicating the terms on which a transaction has already occurred are not advertisements." *Id.* Likewise, messages "sent to facilitate a loan transaction," which typically involve third parties, "such as property appraisals, summary of closing costs, [and] disclosures" are exempt from the TCPA. *See* FCC Order at 25973.

The Fax here, designed to "facilitate, complete, or confirm" existing transactions between Defendants and their insurer-customers, who rely on Defendants' services to manage approvals from treating physicians. The Fax also facilitates transactions between insurers and physicians, by enabling physicians to initiate approval requests online. The Fax was therefore "transactional" and permitted by the FCC.

9

### 2.      The Fax Was An "Informational" Communication

The TCPA claim should also be dismissed because the Fax is the type of "informational" communication the FCC expressly exempts from liability under the TCPA. *See* FCC Order at 25973. For example, newsletters, industry news articles, legislative updates, and employee benefit information all constitute "informational" faxes. FCC Order at 25973.

The FCC has provided a number of non-exclusive factors courts may consider when determining whether a fax is a "bona fide" informational communication, including: (1) whether the message is directed to specific recipients; (2) whether the text of the message changes; (3) whether the message is issued on a regular schedule; (4) the amount of space devoted to informational or transactional content versus advertising content; and (5) whether that advertising content is on behalf of the sender or a third-party who has purchased advertising space. *P&S Printing LLC v. Tubelite, Inc.*, No. 3:14-cv-1441 (VAB), 2015 WL 4425793, *4-5 (D. Conn. July 17, 2015) (granting motion to dismiss based on informational nature of fax, and noting that "[a]lthough it is true the message could apply to new customers, by providing them with delivery dates so they could plan an order accordingly, attracting new customers is not its primary purpose").

Applying the relevant factors from this test demonstrates that the Fax was clearly "informational." First, the Fax is directed to specific recipients – doctors whose patients have requested their treatment be authorized by one of Defendants' insurer-customers. *See* Complaint, Ex. A. Second, the Fax is subject to change based on the scheduling of online sessions as "new training schedules will be published." *Id.* Third,

the Fax is comprised entirely of information regarding Defendants' web portals and training sessions for using them, in the event physicians would prefer to initiate and manage claims online. *Id.* Finally, the Fax contains absolutely no advertising. As explained above – and as conceded by Plaintiff – the commercial services at issue are not available to individual physicians, nor would such physicians have any use for them. Accordingly, the overwhelming weight of relevant FCC factors indicates that the Fax is an "informational" message. *See Sandusky Wellness Center,* 788 F.3d at 225 (faxes were sent as part of a service rendered to healthcare provider's patients and not to market services to providers themselves). The Court should dismiss the TCPA claims.

### C.   Plaintiff's ICFA Claim Falls With Its TCPA Claim

In Count II, Plaintiff alleges Defendants' alleged sending of an unsolicited fax advertisement amounted to "unfair acts and practices practice" in violation of the ICFA § 2, 815 ILCS 505/2. Three inquiries bear on whether a business practice is unfair: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002)

As a threshold matter, because the fax was not an unsolicited advertisement and did not violate the TCPA or Illinois' corollary statute against unsolicited faxes, 720 Ill. Comp. Stat. 5/26–3(b), there is no predicate violation of any law or public policy to trigger liability under the ICFA. But even assuming the Fax were a TCPA violation, "[a] burgeoning majority of courts – and all the recent decisions – hold that receiving one- or two-page unsolicited faxes does not trigger" the "immoral/oppressive" and

11

"substantial injury" factors of *Robinson*. *A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*, No. 16 C 2513, 2017 WL 2619144, at *6 (N.D. Ill. June 16, 2017) (collecting cases). These courts note that "[t]he only burden placed on [the plaintiff] [is] to throw the fax in the trash. This deed can hardly be classified as 'unreasonable.' " *Paldo Sign and Display Co.*, No. 08 C 5959, 2010 WL 276701, at *4 (N.D. Ill. Jan. 15, 2010); *Helping Hand Caregivers, Ltd. v. Darden Restaurants, Inc.*, No. 14 C 10127, 2015 WL 2330197, at *5 (N.D. Ill. May 14, 2015) ("[O]ne unsolicited fax does not rise to the level of immoral, unethical, oppressive, or unscrupulous behavior as required by the Act.").

As far as the "substantial injury" factor, courts hold that damage in the form of "paper and ink or toner" (Complaint ¶ 47) are insufficient under Illinois' doctrine of *de minimis non curat lex*. *See Stonecrafters, Inc. v. Foxfire Printing and Packaging, Inc.* 633 F. Supp. 2d 610, 613-14 (N.D. Ill. 2009); *but see Brodsky v. HumanaDental Ins. Co.*, No. 10-C-3233, 2011 WL 529302, at *7 (N.D. Ill. Feb. 8, 2011) (noting split among district courts and holding that *de minimis* doctrine cannot be resolved on motion to dismiss). This is true even if Plaintiff were able to aggregate the purported "injury" for purposes of a class action. *Urban Elevator Service, LLC v. Stryker Lubricant Distribs. Inc.*, No. 15 C 2128, 2015 WL 6736676, at *3 (N.D. Ill. Nov. 4, 2015) ("Forty people receiving a one-page fax does not amount to a 'substantial injury.' Nor is plaintiff entitled to a reading of its allegations so liberal so as to presume a class size large enough to transform an insubstantial injury into a substantial one."). The Court should dismiss the ICFA claim.

### D.  Plaintiff Fails To State A Claim For Conversion

To state a claim for conversion, Plaintiff must allege, among other things, an

unauthorized and wrongful assumption of control, dominion, or ownership by defendant over plaintiff's property. *Gen. Motors Corp. v. Douglass*, 151 Ill. Dec. 822, 825-26 (App. Ct. 1990). Because Plaintiff cannot state a claim under the TCPA, there is nothing "unauthorized and wrongful" about the facsimile transmission at issue. *Gen. Motors Corp.*, 565 N.E.2d at 96-97, 151 Ill. Dec. at 825-826.

Plaintiff's conversion claim fails for multiple additional reasons. The subject of a conversion claim must be an "identifiable object of property." *Horbach v. Kaczmarek*, 288 F.3d 969, 978 (7th Cir. 2002). Plaintiff alleges only that Defendants converted an indeterminate and unsegregated amount of fungible "paper and ink or toner." Complaint ¶ 62. Further, Plaintiff does not allege that he ever made a demand for its return, another prerequisite for conversion. *Indus. Hard Chrome, Ltd. v. Hetran, Inc.*, 90 F. Supp. 2d 952, 956 (N.D. Ill. 2000). Plaintiff's conversion claim is also insufficient because Defendants never possessed Plaintiff's "paper and ink or toner." *See Rossario's Fine Jewelry v. Paddock Publications, Inc.*, 443 F. Supp. 2d 976 (N.D. Ill. 2006) (noting possession requirement and explaining that "it would impermissibly warp the concept of 'conversion' if that label were to be attached to property (ink, toner and paper)").

Finally, Plaintiff's conversion claim fails under the doctrine of *de minimis non curat lex*. That doctrine "might well have been coined for the occasion in which a conversion claim is brought based solely on the loss of paper and toner consumed during the one-page unsolicited fax advertisement." *G.M. Sign, Inc. v. Elm St. Chiropractic, Ltd.*, 871 F. Supp. 2d 763, 768 (N.D. Ill. 2012). This is true even in putative class actions because "a single sheet of paper and a minuscule amount of toner cannot

be aggregated." *Id.* (collecting cases but noting split in district); *G. Neil Garrett, D.D.S., P.C. v. New Albertson's, Inc.*, No. 13 C 7965, 2014 WL 2198242, at *4 (N.D. Ill. May 27, 2014) (agreeing with *G.M.* and that line of cases).

### E.     Plaintiff Fails To State A Claim For Trespass

"Trespass" is defined as a "tangible interference with property that is intentional, unauthorized, and substantial; a defendant 'intermeddles' with a chattel by intentionally bringing about a physical contact with it that causes harm." *Fidlar Techs. v. LPS Real Estate Data Sols., Inc.*, No. 4:13-CV-4021-SLD-JAG, 2013 WL 5973938, at *9 (C.D. Ill. Nov. 8, 2013). Plaintiff alleges that the transmission "interfered with [its] use of the receiving equipment" (Complaint ¶ 75), but the miniscule amount of time a two-page fax would have taken to transmit through Plaintiff's fax machine does not amount to a "substantial" interference with Plaintiff's machine or otherwise harm the fax machine itself. Nor does it amount to any real damage for purposes of Illinois' *de minimis non curat lex* doctrine.[2] *See Able Home Health, LLC v. Onsite Healthcare, Inc., S.C.*, No. 16-CV-8219, 2017 WL 2152429, at *7 (N.D. Ill. May 17, 2017) (dismissing trespass claim under TCPA where alleged fax was merely "fleeting interference" and "did not cause more than a few pennies" in injury under *de minimis non curat lex* maxim); *G. Neil Garrett*, 2014

---

[2] In support of his trespass claim, Plaintiff's Complaint cites *Chair King, Inc. v. Houston Cellular Corp.*, No. CIV. A. 95-CV-1066, 1995 WL 1693093, at *2 (S.D. Tex. Nov. 7, 1995), *vacated*, 131 F.3d 507 (5th Cir. 1997). *Chair King* is a vacated district court unpublished memorandum order from a different circuit. Its half-page decision addresses trespass in less than one sentence, without citation or analysis, and never identifies the grounds of the motion to dismiss or the factual basis for the claim. It is thus impossible to draw any conclusions from this opinion about the merits of a "trespass to chattels" claim.

WL 2198242, at *5 (dismissing conversion and trespass claims under *de minimis non curat lex* maxim).

## V.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiff's Complaint be dismissed with prejudice.

Dated: September 22, 2017        **Respectfully submitted,**

MEDSOLUTIONS, INC. and CARECORE NATIONAL, LLC

By:    _/s/ Eric M. Roberts_____

Eric M. Roberts (ARDC # 6306839)
**DLA Piper LLP (US)**
444 West Lake Street, Suite 900
Chicago, Illinois 60606
312.368.2167
eric.roberts@dlapiper.com

Perrie M. Weiner (admitted *pro hac vice*)
Edward D. Totino (admitted *pro hac vice*)
**DLA Piper LLP (US)**
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067
perrie.weiner@dlapiper.com
edward.totino@dlapiper.com