**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **Dr. Robert Gerber**, on behalf of plaintiff and the class members defined herein,<br><br>       Plaintiff,<br><br>  v.<br><br>**Medsolutions, Inc.**, and **Carecore National, LLC** both d/b/a **Evicore Healthcare**, *et al.*<br><br>       Defendants. | Hon. Robert W. Gettleman<br><br>Case No. 17 cv 5553 |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
THEIR MOTION TO DISMISS AMENDED COMPLAINT**

Defendants Medsolutions, Inc. and Carecore National, LLC (collectively "Defendants"), move this Court, under Fed. R. Civ. Proc. 12(b)(6), to dismiss the Amended Complaint – Class Action ("Complaint") of Plaintiff Dr. Robert Gerber ("Plaintiff") with prejudice.

## I.    INTRODUCTION

Plaintiff brings this lawsuit under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, because he was sent a fax (the "Fax", attached as Exhibit A to the Amended Complaint) containing a schedule of online orientation sessions where medical providers could learn how to use Defendants' web portal to obtain authorizations from Defendants' insurer clients. Nothing in the Fax advertised or sought to sell anything to Plaintiff, a physician. Yet Plaintiff claims that the fax was advertising and attempts to bring a class action against Defendants.

On January 11, 2018, the Court dismissed Plaintiff's original complaint and entered judgment for Defendants because the Fax was not advertising and did not violate the TCPA. ECF No. 39. When Plaintiff requested reconsideration, the Court denied that motion but generously allowed Plaintiff to file an Amended Complaint. ECF No. 43. Plaintiff's Amended Complaint, while adding a few allegations about other business that Defendants do that is unrelated to the online orientation sessions or the Fax, fails to add any allegations showing that the Fax was an advertisement.

The Fax merely provides physicians with a schedule of upcoming orientation sessions to learn how to use Defendants' web portal if those physicians – who accept

coverage from one of Defendants' insurer-customers – wish to "initiate [patient] authorizations" or "check the status of an existing case" online. A fax is not actionable under the TCPA unless it constitutes an "unsolicited advertisement," defined as "material advertising the commercial availability or quality of any property, goods or services . . . ." 47 U.S.C. § 227(a)(5). Nothing within Exhibit A to the Complaint could reasonably be construed as an advertisement by or on behalf of Defendants to Plaintiff. The Fax was not an unsolicited advertisement and the Court should dismiss the Amended Complaint just as it dismissed the original Complaint.

## II.     FACTUAL BACKGROUND

Plaintiff alleges that Defendants are "engaged in the business of providing healthcare management services to insurers, benefit plans, and others that pay for healthcare (the 'payors')." Compl. ¶ 15. Quoting Defendants' website, Plaintiff alleges that Defendants describe themselves as providing "management solutions for managed care and risk-bearing providers, delivering custom, calibrated strategies and services that reduce and control costs, and enable our clients to ensure higher quality, intelligent care for patients." *Id.* ¶ 16 (quoting https://www.evicore.com/pages/about.aspx). In short, as the Amended Complaint itself makes clear, Defendants' business is providing healthcare management services to insurers and health plans. While the Amended Complaint alleges that Defendants have a separate "Network Operations Unit" that provides services to "high performing specialty provider networks," *id.* ¶ 19, the Amended Complaint does not allege – and cannot allege – that Defendants ever sign up individual doctors like Plaintiff as customers or clients. The best Plaintiff can allege is

2

that such doctors somehow "indirectly pay" for their participation in Defendants' training sessions. *Id.* ¶ 26.

The Amended Complaint alleges that Defendants sent the Fax to Plaintiff. *Id.* ¶¶ 11, 13 & Ex. A thereto. But Plaintiff pleads no facts showing that the fax is an unsolicited advertisement. Instead, from the face of Exhibit A, and as recognized by the Court when it dismissed the Original Complaint, it is apparent that the Fax relates to Defendants' "portals, which have already been sold and are being used by defendant's clients with whom plaintiff has a relationship." ECF No. 39 at 5. In other words, if Plaintiff's patients are insured by Defendants' health insurer clients, Plaintiff would have to obtain authorizations from Defendants for those patients' care. The Fax notes the utility of initiating patient authorizations and checking the status of existing cases via Defendants' web portal, explaining that "[o]ur self-service web portal is available 24/7, allowing you the opportunity to initiate new requests and review case information at your convenience." Compl. ¶ 11 & Ex A. The Fax lists a schedule of orientation sessions for using Defendants' web portal and explains how to register for a session. The Fax further explains that if a medical provider cannot participate in a scheduled session, they may call or email Defendants' Web Support team. *Id.* The Fax does not try to sell anything to Plaintiff and is not an advertisement.

## III.   LEGAL STANDARD

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007)). A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*

## IV.   ARGUMENT

### A.   Plaintiff Fails to State a Claim Under the TCPA Because the Alleged Fax Is Not an "Advertisement."

As the Court previously found, Plaintiff cannot state a claim for violation of the TCPA because the faxed schedule of orientation sessions is not an "advertisement" and therefore not subject to the statute. Nothing Plaintiff added to the Complaint changes that.

The TCPA only prohibits unsolicited fax "advertisements." *See* 47 U.S.C. § 227(b)(1)(C). "Advertisement" is defined by the TCPA as "any material advertising the commercial availability or quality of any property, goods, or services[.]" 47 U.S.C. §227(a)(4). Moreover, the FCC has clarified that faxes are only subject to the TCPA if their "primary purpose" is to "promote a commercial product or service" in an effort to generate "new or additional business." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 and Junk Fax Prevention Act of 2005*, CG Docket Nos. 02-0278 and 05-338, Final Rule, FCC06-42, 71 Fed. Reg. 25967-01, 25972-73 (May 3, 2006) ("FCC Order") at 25973.

The faxed schedule is not an advertisement because it was not sent in the hope of generating business from Plaintiff. Indeed, as in the original Complaint, Plaintiff continues to allege that Defendants are "engaged in the business of providing healthcare management services to insurers, benefit plans, and others that pay for

4

healthcare (the '**payors**')" – i.e., not to individual physicians. Compl. ¶ 15 (emphasis added). Plaintiff does add that Defendants have a business unit that administers "high performing specialty provider networks," *id.* ¶ 19, but Plaintiff fails to allege that he is such a network or even that the Fax has anything to do with such networks. Plaintiff's new allegations add nothing to his case. Indeed, as the Fax itself demonstrates, the sessions are designed to train specific physicians – those who accept coverage from Defendants' health insurers-customers – on how to initiate and manage authorizations online. Plaintiff does not allege – nor can he allege – that individual physicians like himself would ever purchase any service from Defendants as a result of their participation in such an orientation session.

Accordingly, the Fax is a far cry from the sort of indiscriminate, open-ended invitation for randomly-selected recipients to purchase a business' services.[1] Courts agree that faxes sent as services to third parties, as opposed to current or potential customers, are not advertisements. *See, e.g., Sandusky Wellness Ctr., LLC v. Medco Health Solutions, Inc.*, 788 F.3d 218 (6th Cir. 2015) (affirming summary judgment in favor of defendant pharmacy benefit manager, who sent faxes to healthcare provider identifying plan-preferred medications as service to plaintiff's patients); *Phillip Long Dang, D.C., P.C. v. XLHealth Corp.*, No. 09 cv 1076, 2011 WL 553826, at *4 (N.D. Ga. Feb. 7, 2011) (fax

---

[1] *Cf. Brodsky v. HumanaDental Ins. Co.*, No. 10 cv 3233, 2014 WL 2780089 (N.D. Ill. June 12, 2014) (insurer sent faxes to insurance wholesaler encouraging it to include defendant's plans in offered products); *N. Suburban Chiropractic Clinic, Ltd. v. Merc & Co., Inc.*, No. 13 cv 3113, 2013 WL 5170754, at *4 (N.D. Ill. 2013) (fax promoting seminar was pretext for marketing goods and services); *Green v. Time Ins. Co.*, 629 F. Supp. 2d 834, 834-35 (N.D. Ill. 2009) (fax promoted insurance agent contract that provided the recipient, among other things, with "opportunity for bonus programs & rewards").

inviting doctors to seminar regarding defendant's billing practices, to learn how to submit claims and speed up reimbursement process, was not advertisement); *Physicians HealthSource, Inc. v. MultiPlan Servs., Corp.*, No. 12 cv 11693, 2013 WL 5299134, at *2 (D. Mass. Sept. 18, 2013) (fax by company that facilitates relationships between health care provider networks and patients to plaintiff health care provider "advising him that he had access to a population of patients within the network by virtue of his participation in the MultiPlan Network" was not unsolicited advertisement but "merely appris[ed] [the doctor] of features of an account to which he already has access").

The District Court of Colorado's decision in *Absolute Health Center, Inc. v. Multiplan, Inc.*, No. 15 cv 01624, 2016 WL 7868822 (D. Colo. Sept. 23, 2016), is particularly instructive. There, a healthcare provider sued a preferred provider organization network whose contracted "payers" (including insurers) authorized the defendant to perform claim negotiation services with out-of-network providers. *Id.* at *2. The defendant sent faxes to the plaintiff, an out-of-network medical provider, on behalf of contracted payers regarding certain claims. *Id.* The district court concluded that the faxes were not "advertisements" because the services were being performed on behalf of a third party (i.e., the payers), and were therefore not being advertised to the plaintiff provider. *Id.* at *5-6. It was thus "impossible for defendant to be advertising an available service, as required by 47 U.S.C. § 227(a)(5) . . . when that service is patently not available, given that it is already being provided for the [r]elevant [p]ayer." *Id.* at *6. The court rejected the notion that any indirect financial benefit transformed the faxes into advertisements: "The fact that some element of commerciality is involved in the

6

disputed facsimiles is not what the TCPA prohibits; it is, instead the advertising of a commercially available product or service." *Id.*

In connection with opposing Defendants' motion to dismiss Plaintiff's original complaint, Plaintiff heavily relied on *Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 847 F.3d 92 (2d Cir. 2015), and *Orrington v. Scion Dental, Inc.*, No. 17 cv 00884, 2017 WL 5569741 (N.D. Ill. Nov. 20, 2017) ("*Orrington II*"). Neither case supports Plaintiff's position. *Boehringer* involved a fax that invited doctors (the defendant's customers) to a free dinner meeting to discuss particular disorders that could be treated by a drug developed by the defendant, so marketing the drug was to take place at the meeting. As the Court previously recognized, "[t]he allegations in the instant complaint are nothing like those in *Boehringer*." ECF No. 39 at 5. *Orrington II* involved allegations that Scion, a company that provides "electronic communications between (1) medical providers, like Plaintiff, (2) insurance companies, benefit plans, and government agencies, (3) and patients" sent the fax at issue to "recruit dentists[.]" *Id.* at *1. Scion was selling the dentists "access to more patients" in exchange for their agreeing to "Scion's cost-containment practices[.]" *Id.* *2. Thus, the dentists like to the plaintiff were to become Scion's customers.

In contrast here, it is the insurers and other payors who are Defendants' customers, not the providers or their patients. Compl. ¶ 15. The online training sessions are to show providers how to use the web portal to obtain prior-authorizations from Defendants' insurer clients. *Id.* ¶ 23. Plaintiff never alleges that Defendants used the Fax to sell anything to Plaintiff, instead alleging that Defendants "derived an economic

benefit from the sending of the faxes[.]" *Id.* ¶ 27. As Defendants noted in their original motion to dismiss, every fax sent by a business is sent to derive an economic benefit because the purpose of a business is to make a profit, but that does not mean that every fax sent by a business is an advertisement. Moreover, despite the Court's dismissal of the original Complaint, Plaintiff again makes the vague allegation that medical offices "indirectly pay for the services offered in the fax and the webinars," *id.* ¶ 26, without explaining how, unlike in *Orrington II* where the plaintiff alleged that "the medical providers agree to Scion's cost-containment practices[.]" *Orrington II,* 2017 WL 5569741, at *2. That is because unlike in *Orrington II*, doctors like Plaintiff are *not* Defendants' clients.

Like the defendants in *Sandusky* and *Absolute Health*, Defendants here did not advertise any services to Plaintiff. Per the Complaint's allegations, the customers of Defendants' preauthorization services are the "payors" – i.e., the insurers – not individual medical providers like Plaintiff. That there may be some commercial benefit to Defendants does not make the Fax an advertisement or violate the TCPA. *See id.*; *St. Louis Heart Ctr., Inc. v. Caremark, L.L.C*, No. 12 cv 2151, 2013 WL 9988795, at *2 (E.D. Mo. Apr. 19, 2013) ("ancillary commercial benefit" to sender does render fax "advertisement"). The Court should dismiss the TCPA claim.[2]

---

[2] Since the Fax was not an advertisement, no opt out notice was required to be included in the Fax. *See* 47 U.S.C. § 227(b)(1)(c)(iii); 47 CFR 64.1200(a)(4)(iii).

**B.    Plaintiff Also Fails to State a Claim Under the TCPA for the Independent Reasons that the Fax Was "Transactional" and "Informational."**

Plaintiff's TCPA claims also fail for the independent reasons that the Fax is both a "transactional" and "informational" communication as those terms are defined by the FCC. *See* FCC Order at 25972-73. Such "transactional" or "informational" messages are expressly authorized by the FCC, the agency responsible for interpreting and implementing the TCPA. 47 U.S.C. § 151.

**1.    The Fax Was a "Transactional" Communication.**

On its face, the Fax was designed to "facilitate, complete, or confirm" existing transactions between Defendants and their insurer-customers. Such "transactional" messages that "relate specifically to existing accounts and ongoing transactions" and that do not seek "new or additional business" are not unsolicited advertisements as a matter of law. *See* FCC Order at 25972-73; *Grind Lap Servs., Inc. v. UBM LLC*, No. 14 cv 6448, 2015 WL 6955484, at *3 (N.D. Ill. Nov. 10, 2015), *appeal dismissed* (Mar. 17, 2016) (faxed subscription renewal request was "transactional" message).

Importantly, a pre-existing relationship between the sender and recipient is not necessary for a fax to be "transactional" under the FCC's definition. The FCC Order makes clear that the essential component of all "transactional" communications is simply their relation to "existing accounts and ongoing transactions. [By contrast] [m]essages regarding new or additional business . . . [are] covered by the prohibition." *Id*. at 25973. Accordingly, the FCC's examples of "transactional" messages include messages sent to third-party intermediaries who facilitate existing transactions. *Id*. For

example, "a mortgage rate sheet sent to a broker or other intermediary or a price list sent from a wholesaler to a distributor (*e.g.*, food wholesaler to a grocery store) for the purpose of communicating the terms on which a transaction has already occurred are not advertisements." *Id*. Likewise, messages "sent to facilitate a loan transaction," which typically involve third parties, "such as property appraisals, summary of closing costs, [and] disclosures" are exempt from the TCPA. *See id*.

The Fax here, designed to "facilitate, complete, or confirm" existing transactions between Defendants and their insurer-customers, who rely on Defendants' services to manage approvals from treating physicians. The Fax also facilitates transactions between insurers and physicians, by enabling physicians to initiate approval requests online. The Fax was therefore "transactional" and permitted by the FCC.

### 2.     The Fax Was an "Informational" Communication.

The TCPA claim should also be dismissed because the Fax is the type of "informational" communication the FCC expressly exempts from liability under the TCPA. *See* FCC Order at 25973. For example, newsletters, industry news articles, legislative updates, and employee benefit information all constitute "informational" faxes. *Id*.

The FCC has provided a number of non-exclusive factors courts may consider when determining whether a fax is a "bona fide" informational communication, including: (1) whether the message is directed to specific recipients; (2) whether the text of the message changes; (3) whether the message is issued on a regular schedule; (4) the amount of space devoted to informational or transactional content versus advertising

10

content; and (5) whether that advertising content is on behalf of the sender or a third-party who has purchased advertising space. *P&S Printing LLC v. Tubelite, Inc.*, No. 14 cv 1441, 2015 WL 4425793, *4-5 (D. Conn. July 17, 2015) (granting motion to dismiss based on informational nature of fax, and noting that "[a]lthough it is true the message could apply to new customers, by providing them with delivery dates so they could plan an order accordingly, attracting new customers is not its primary purpose").

Applying the relevant factors from this test demonstrates that the Fax was clearly "informational." First, the Fax is directed to specific recipients – doctors whose patients have requested their treatment be authorized by one of Defendants' insurer-customers. *See* Compl. Ex. A. Second, the Fax is subject to change based on the scheduling of online sessions as "new training schedules will be published." *Id.* Third, the Fax is comprised entirely of information regarding Defendants' web portals and training sessions for using them, in the event physicians would prefer to initiate and manage claims online. *Id.* Finally, the Fax contains absolutely no advertising. Accordingly, the overwhelming weight of relevant FCC factors indicates that the Fax is an "informational" message. *See Sandusky Wellness Ctr.*, 788 F.3d at 225 (faxes were sent as part of a service rendered to healthcare provider's patients and not to market services to providers themselves). The Court should dismiss the TCPA claim.

## C.  Plaintiff's ICFA Claim Falls with its TCPA Claim.

In Count II, Plaintiff alleges Defendants' alleged sending of an unsolicited fax advertisement amounted to "unfair acts and practices practice" in violation of the ICFA § 2, 815 ILCS 505/2. Three inquiries bear on whether a business practice is unfair:

11

"(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002).

As a threshold matter, because the fax was not an unsolicited advertisement and did not violate the TCPA or Illinois' corollary statute against unsolicited faxes, 720 ILCS 5/26–3(b), there is no predicate violation of any law or public policy to trigger liability under the ICFA. But even assuming the Fax were a TCPA violation, "[a] burgeoning majority of courts – and all the recent decisions – hold that receiving one- or two-page unsolicited faxes does not trigger" the "immoral/oppressive" and "substantial injury" factors of *Robinson*. *A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*, No. 16 cv 2513, 2017 WL 2619144, at *6 (N.D. Ill. June 16, 2017) (collecting cases). These courts note that "[t]he only burden placed on [the plaintiff] [is] to throw the fax in the trash. This deed can hardly be classified as 'unreasonable.'" *Paldo Sign &Display Co. v. Topsail Sportswear, Inc.*, No. 08 cv 5959, 2010 WL 276701, at *4 (N.D. Ill. Jan. 15, 2010); *Helping Hand Caregivers, Ltd. v. Darden Rests., Inc.*, No. 14 cv 10127, 2015 WL 2330197, at *5 (N.D. Ill. May 14, 2015) ("[O]ne unsolicited fax does not rise to the level of immoral, unethical, oppressive, or unscrupulous behavior as required by the Act.").

As far as the "substantial injury" factor, courts hold that damage in the form of "paper and ink or toner," Compl. ¶ 53, are insufficient under Illinois' doctrine of *de minimis non curat lex*. *See Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc.* 633 F. Supp. 2d 610, 613-14 (N.D. Ill. 2009); *but see Brodsky v. HumanaDental Ins. Co.*, No. 10 cv 3233, 2011 WL 529302, at *7 (N.D. Ill. Feb. 8, 2011) (noting split among district courts

and holding that *de minimis* doctrine cannot be resolved on motion to dismiss). This is true even if Plaintiff were able to aggregate the purported "injury" for purposes of a class action. *Urban Elevator Serv., LLC v. Stryker Lubricant Distribs. Inc.*, No. 15 cv 2128, 2015 WL 6736676, at *3 (N.D. Ill. Nov. 4, 2015) ("Forty people receiving a one-page fax does not amount to a 'substantial injury.' Nor is plaintiff entitled to a reading of its allegations so liberal so as to presume a class size large enough to transform an insubstantial injury into a substantial one."). Indeed, the court in *Orrington II*, so heavily (but mistakenly) relied on by Plaintiff to support his TCPA claim when he opposed Defendants' original motion to dismiss, dismissed Plaintiff's ICFA count because the receipt of a single unsolicited fax is neither oppressive nor the cause of substantial injury. *Orrington II*, 2017 WL 5569741, at *6. The Court should dismiss the ICFA claim.

### D. Plaintiff Fails to State a Claim for Conversion.

To state a claim for conversion, Plaintiff must allege, among other things, an unauthorized and wrongful assumption of control, dominion, or ownership by defendant over plaintiff's property. *Gen. Motors Corp. v. Douglass*, 565 N.E.2d 93, 96-97 (Ill. App. Ct. 1990). Because Plaintiff cannot state a claim under the TCPA, there is nothing "unauthorized and wrongful" about the facsimile transmission at issue. *Id.*

Plaintiff's conversion claim fails for multiple additional reasons. The subject of a conversion claim must be an "identifiable object of property." *Horbach v. Kaczmarek*, 288 F.3d 969, 978 (7th Cir. 2002). Plaintiff alleges only that Defendants converted an indeterminate and unsegregated amount of fungible "paper and ink or toner." Compl. ¶ 66. Further, Plaintiff does not allege that he ever made a demand for its return,

another prerequisite for conversion. *Indus. Hard Chrome, Ltd. v. Hetran, Inc.*, 90 F. Supp. 2d 952, 956 (N.D. Ill. 2000). Plaintiff's conversion claim is also insufficient because Defendants never possessed Plaintiff's "paper and ink or toner." *See Rossario's Fine Jewelry v. Paddock Pubs., Inc.*, 443 F. Supp. 2d 976 (N.D. Ill. 2006) (noting possession requirement and explaining that "it would impermissibly warp the concept of 'conversion' if that label were to be attached to property (ink, toner and paper)").

Finally, Plaintiff's conversion claim fails under the doctrine of *de minimis non curat lex*. That doctrine "might well have been coined for the occasion in which a conversion claim is brought based solely on the loss of paper and toner consumed during the one-page unsolicited fax advertisement." *G.M. Sign, Inc. v. Elm St. Chiropractic, Ltd.*, 871 F. Supp. 2d 763, 768 (N.D. Ill. 2012). This is true even in putative class actions because "a single sheet of paper and a minuscule amount of toner cannot be aggregated." *Id.* (collecting cases but noting split in district); *G. Neil Garrett, D.D.S., P.C. v. New Albertson's, Inc.*, No. 13 cv 7965, 2014 WL 2198242, at *4 (N.D. Ill. May 27, 2014) (agreeing with *G.M.* and that line of cases); *Orrington II*, 2017 WL 5569741, at *7 ("any damages from the ink, toner and paper" in connection with the fax "are plainly *de minimis*.").

### E. Plaintiff Fails to State a Claim for Trespass.

"Trespass" is defined as a "tangible interference with property that is intentional, unauthorized, and substantial; a defendant 'intermeddles' with a chattel by intentionally bringing about a physical contact with it that causes harm." *Fidlar Techs. v. LPS Real Estate Data Sols., Inc.*, No. 13 cv 4021, 2013 WL 5973938, at *9 (C.D. Ill. Nov. 8,

14

2013). Plaintiff alleges that the transmission "interfered with [its] use of the receiving equipment," Compl. ¶ 81, but the miniscule amount of time a two-page fax would have taken to transmit through Plaintiff's fax machine does not amount to a "substantial" interference with Plaintiff's machine or otherwise harm the fax machine itself. Nor does it amount to any real damage for purposes of Illinois' *de minimis non curat lex* doctrine.[3] *See Able Home Health, LLC v. Onsite Healthcare, Inc., S.C.*, No. 16 cv 8219, 2017 WL 2152429, at *7 (N.D. Ill. May 17, 2017) (dismissing trespass claim under TCPA where alleged fax was merely "fleeting interference" and "did not cause more than a few pennies" in injury under *de minimis non curat lex* maxim); *G. Neil Garrett*, 2014 WL 2198242, at *5 (dismissing conversion and trespass claims under *de minimis non curat lex* maxim); *Orrington II*, 2017 WL 5569741, at *8.

## V.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiff's Amended Complaint be dismissed with prejudice.

---

[3] In support of his trespass claim, Plaintiff's Complaint cites *Chair King, Inc. v. Houston Cellular Corp.*, No. 95 cv 1066, 1995 WL 1693093, at *2 (S.D. Tex. Nov. 7, 1995), *vacated*, 131 F.3d 507 (5th Cir. 1997). *Chair King* is a vacated district court unpublished memorandum order from a different circuit. Its half-page decision addresses trespass in less than one sentence, without citation or analysis, and never identifies the grounds of the motion to dismiss or the factual basis for the claim. It is thus impossible to draw any conclusions from this opinion about the merits of a "trespass to chattels" claim.

Dated: February 13, 2018     **Respectfully submitted,**

MEDSOLUTIONS, INC. and CARECORE NATIONAL, LLC

By:   */s/ Eric M. Roberts*

Eric M. Roberts (ARDC # 6306839)
**DLA Piper LLP (US)**
444 West Lake Street, Suite 900
Chicago, Illinois 60606
312.368.2167
eric.roberts@dlapiper.com

Perrie M. Weiner (admitted *pro hac vice*)
Edward D. Totino (admitted *pro hac vice*)
**DLA Piper LLP (US)**
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067
perrie.weiner@dlapiper.com
edward.totino@dlapiper.com