IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Dr. Robert Gerber**, on behalf of plaintiff and the class members defined herein, <br><br>  Plaintiff, <br><br> v. <br><br> **MedSolutions, Inc.**, and **Carecore National, LLC** both d/b/a **eviCore healthcare**, *et al.* <br><br>  Defendants. | Hon. Robert W. Gettleman <br><br> Case No. 17 cv 5553 |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS AMENDED COMPLAINT**

**I.  INTRODUCTION**

On January 11, 2018, the Court dismissed Plaintiff's original complaint and entered judgment for Defendants because the fax at issue (the "Fax") was not advertising and did not violate the TCPA. (ECF No. 39.) After obtaining leave from the Court, Plaintiff filed an Amended Complaint ("Complaint") that merely added a few irrelevant allegations about other business that Defendants MedSolutions, Inc.[1] and Carecore National, LLC conduct. This other business has nothing to do with the online training sessions that are the subject of the Fax. Therefore, as demonstrated in Defendants' motion to dismiss the amended complaint ("Motion"), Plaintiff's new allegations provide no reason for the Court to change its previous decision that the Fax was not advertising.

---

[1] Defendant MedSolutions, Inc. has been converted from a corporation to an LLC and changed its name to eviCore healthcare MSI, LLC. (*See* ECF No. 45.)

Recognizing that he cannot allege facts showing that the Fax was advertising, Plaintiff relies on inapplicable language from a 2006 FCC order and a recent decision from outside this Circuit to argue that virtually any Fax sent by a business is presumed to be advertising. Of course, this is not the law, and as demonstrated below, neither the FCC order nor the out-of-circuit decision stand for the proposition that a fax about a schedule for online training sessions is presumed to be an advertisement.

Since the Fax is not presumed to be an advertisement, Plaintiff alleges no facts showing that Fax was an advertisement. The Court previously ruled that the Fax was not an advertisement and did not violate the TCPA. The Court should dismiss Plaintiff's Count I for violation of the TCPA once again.

Defendants request that this time the Court also dismiss Plaintiff's remaining three Counts for failure to state a claim upon which relief may be granted rather than declining to exercise jurisdiction over those claims. As recognized by numerous courts in this district, the receipt of a fax might use a bit of paper or ink, but that loss of paper or ink is not sufficient to support a claim under the Illinois Consumer Fraud Act ("ICFA") or for conversion or trespass.

The Court generously granted Plaintiff the opportunity to attempt to fix his flawed Complaint even though Plaintiff never requested that opportunity before judgment was entered in this case. Plaintiff has now made his best effort to state a claim and has failed. Therefore, it is time put this case to rest once and for all. The Court should grant the Motion in its entirety and with prejudice.

## II. THE COURT SHOULD AGAIN DISMISS COUNT I BECAUSE THE FAX DOES NOT VIOLATE THE TCPA.

As Defendants demonstrated in their Motion, as the Court previously found when it dismissed the original complaint, and as is apparent from the Fax itself, the Fax at issue does not advertise anything. Instead, it provides a schedule of web portal training sessions. Because the fax is not an advertisement, Plaintiff cannot state a claim for violation of the TCPA, and the Court should dismiss Plaintiff's Complaint just like it dismissed the original complaint. *See* 47 U.S.C. § 227(b)(1)(C).

In the Complaint, Plaintiff fails to allege any new facts that indicate that the Fax here was advertising. While Plaintiff lists a few allegations on page 8 of his Opposition, none of these allegations establish that the schedule of online training sessions were sent to generate business from Plaintiff. Plaintiff continues to allege that Defendants are "engaged in the business of providing healthcare management services to insurers, benefit plans, and others that pay for healthcare (the '**payors**')"—i.e., not to individual physicians. (Compl. ¶ 15 (emphasis added).) Plaintiff does not allege—nor can he allege—that individual physicians like himself would ever purchase any service from Defendants as a result of their participation in such an online training. Plaintiff's new allegations add nothing to his case and the Court should again dismiss it.

### A. No Presumption of Advertising Applies Here.

Knowing that he has alleged no facts supporting advertising, Plaintiff attempts to avoid dismissal by arguing that there is presumption of advertising, relying on language from a decade-old FCC order that by its terms does not apply and two

inapposite cases from outside this Circuit. None of this authority supports Plaintiff's position.

The language in the FCC order states that "facsimile messages that promote goods or services even at no cost, such as free magazine subscriptions, catalogs, or free consultations or seminars, are unsolicited advertisements under the TCPA's definition. In many instances, 'free' seminars serve as a pretext to advertise commercial products or services." Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Protection Act of 2005, 71 Fed. Reg. 25967-01 at 25973, 2006 WL 1151584 (May 3, 2006) (the "2006 TCPA Fax Order"). This language does not by its terms apply here. It refers to free magazine subscriptions, consultations, or seminars that "promote" goods or services. Nowhere does it mention online training sessions like the subject of the Fax at issue in this case.

Simply because an online training session is free does not mean that it is the same as a free magazine subscription or free seminar that will be used to promote goods or services. Plaintiff needs to allege facts showing this will happen, and Plaintiff has not and cannot allege any such facts here because Plaintiff was not and could not become Defendants' customer through the online training. Defendants' customers are insurers or other payors (Compl. ¶ 15), not providers like Plaintiff.

Likewise, the two out-of-circuit cases relied on by Plaintiff do not apply. Besides being non-binding, *Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 883 F.3d 459 (4th Cir. 2018), involved a fax containing an offer for a free desk book containing what amounted to advertisements for drugs. The publisher of the book was "paid by

4

pharmaceutical manufacturers for including their drugs" in the book. *Id.* at 462. The book was basically a free catalog which places it squarely within the language of the 2006 TCPA Fax Order. That is nothing like the Fax sent by Defendants here, which contained information regarding online training sessions, not advertising.

Similarly, *Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*, 847 F.3d 92 (2d Cir. 2017), involved an entirely different situation than what happened here. In that case, the fax invited doctors (the defendant's customers) to a free dinner meeting to discuss particular disorders. The sender of the fax had applied to the Food and Drug Administration for approval to market a drug to treat those disorders. The Second Circuit agreed that the plaintiff eventually would have to prove that the defendant intended to advertise its products at the meeting, but decided that plaintiff did not have to do this at the pleading stage. *Id.* at 95.[2] *Boehringer Ingelheim* has no application here because Defendants' Fax informed recipients (who were not Defendants' customers) about upcoming online web portal training sessions. Unlike in *Boehringer Ingelheim*, the circumstances in no way support the inference that sales pitches would be made. Training is not selling or advertising. Moreover, Defendants had nothing to sell or advertise to Plaintiff as the training sessions concerned Defendants' work for insurers

---

[2] The *Boehringer Ingelheim* court expressly rejected the presumption of advertising for all faxes promoting a free seminar that was subsequently adopted by *Carlton & Harris*, stating, "Of course, as other courts have ruled, not every unsolicited fax promoting a free seminar satisfies the Rule. . . . The Rule does not aim at faxes promoting free seminars per se[.]" *Id.* at 96. In *Boehringer Ingelheim* the Second Circuit correctly analyzed the 2006 TCPA Fax Order as a whole and in context, rather than picking a distinct sentence out of the Order's discussion and treating that sentence as gospel as did the Fourth Circuit in *Carlton & Harris*. Regardless, neither decision involved a schedule of online training sessions like the fax here.

5

when authorizing treatment, not any work for providers. No presumption of advertising applies here.

      **B.    Plaintiff Alleges No Facts Showing Advertising.**

Since there is no presumption of advertising for faxes containing a schedule of online training sessions and Plaintiff offers no support for such a presumption, Plaintiff must demonstrate that the Fax was advertising by alleging facts. Plaintiff cannot do this because, as numerous courts have found, faxes like that attached to the Complaint are *not* advertisements. *See, e.g.*, *Sandusky Wellness Ctr., LLC v. Medco Health Solutions, Inc.*, 788 F.3d 218 (6th Cir. 2015) (affirming summary judgment in favor of defendant pharmacy benefit manager, who sent faxes to healthcare provider identifying plan-preferred medications as service to plaintiff's patients); *Phillip Long Dang, D.C., P.C. v. XLHealth Corp.*, No. 09 cv 1076, 2011 WL 553826, at *4 (N.D. Ga. Feb. 7, 2011) (fax inviting doctors to seminar regarding defendant's billing practices, to learn how to submit claims and speed up reimbursement process, was not advertisement); *Physicians HealthSource, Inc. v. MultiPlan Servs., Corp.*, No. 12 cv 11693, 2013 WL 5299134, at *2 (D. Mass. Sept. 18, 2013) (fax by company that facilitates relationships between health care provider networks and patients to plaintiff health care provider "advising him that he had access to a population of patients within the network by virtue of his participation in the MultiPlan Network" was not unsolicited advertisement but "merely appris[ed] [the doctor] of features of an account to which he already has access"); *Absolute Health Ctr., Inc. v. Multiplan, Inc.*, No. 15 cv 01624, 2016 WL 7868822 (D. Colo. Sept. 23, 2016) (holding that faxes were not "advertisements" because the services were being

6

performed on behalf of a third party (i.e., the payers), and were therefore not being advertised to the plaintiff provider).

Plaintiff's attempts to distinguish these cases fail. For example, Plaintiff argues that *Sandusky Wellness Center* does not apply here because Plaintiff had no business relationship with Defendants. That actually proves Defendants' point that the Fax did not violate the TCPA—Defendants were *not* advertising anything *to* Plaintiff because he would not become their customer.

Indeed, Plaintiff never denies that he had a relationship with the insurers (payors) who *are* Defendants' customers or with the patients who are the insurers' customers. Insurers may direct the Plaintiff to seek authorizations from Defendants on patient coverage, a process for which Plaintiff could receive training during the sessions described in the Fax. The online training sessions are pertinent to the business relationship between Defendants and its client insurers (payors), the relationship between the insurers (payors) and their clients (Plaintiff's patients), and the relationship between the insurers (payors) and Plaintiff. This brings the case squarely within the reasoning of *Sandusky Wellness Center, Phillip Long Dang*, *Orrington I*, *Physicians HealthSource*, and *Absolute Health*, where the courts found no TCPA violations. Just as the defendant in *Sandusky*, Defendants here are intermediaries between Plaintiff's patients and their insurers. Just as in *Sandusky*, the fax at issue here did not solicit any business from Plaintiff. Just as in *Sandusky*, the fax did not offer anything for sale, which is required to be an ad. *See* 788 F.3d at 224-25.

It is not surprising that Plaintiff fails to allege facts showing advertising here because Defendants perform authorization services for insurers (payors), not providers like Plaintiff. This is why the *Absolute Health* decision is also on point. As in *Absolute Health*, because Defendants work for the insurers (the payors) the "massive, chasm-sized problem" for Plaintiff is that the service and activity "are not being advertised" to Plaintiff "and are, in fact, being performed on behalf of another party[.]" 2016 WL 7868822, at *5.[3] Plaintiff is on the opposite side of the business transaction from Defendants' customers. Defendants were not advertising anything to Plaintiff.

The Court should follow *Sandusky Wellness Center*, *Phillip Long Dang*, *Orrington I*, *Physicians HealthSource*, and *Absolute Health*, find that there was no TCPA violation here, and dismiss Count I for violation of the TCPA once again.[4]

---

[3] Citing ¶¶ 21-27 of his Complaint, Plaintiff claims that providers "indirectly pay" for Defendants' services through "agreeing" to cost savings. (Opp. 8.) But those paragraphs of the Complaint make no reference to any agreement to cost savings by Plaintiff or any other providers. Instead, as in *Absolute Health* the insurers require Plaintiff to use Defendants' services for the insurers' benefit. This does not make Plaintiff the customer of Defendants or someone that Defendants would advertise to.

[4] The numerous cases cited by Plaintiff do not support his position. None establish that online training sessions like those at issue here are advertising. In *America's Health & Resource Ctr., Ltd. v. Promologics, Inc.*, No. 16 cv 9281, 2017 WL 5001284 (N.D. Ill. Nov. 2, 2017), the fax at issue invited nurses to a free "promotional" dinner program and said that registering for the program provided permission to use personal information for offers from healthcare companies. Nothing like that was in the fax sent by Defendants here. In *Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*, No. 12 cv 2132, 2015 WL 3827579 (D.N.J. June 19, 2015), the fax was not about training but instead was sent by "alert Marketing, Inc." and, the plaintiff contended, was part of the defendants' "overall campaign to increase Levaquin's market share," so the court found there were issues of fact regarding whether the fax was an unsolicited advertisement. Similarly, in *N. Suburban Chiropractic Clinic, Ltd. v. Merck & Co., Inc.*, No. 13 cv 3113, 2013 WL 5170754 (N.D. Ill. Sep. 13, 2013), the plaintiff alleged that the defendant drug company used the webcast to market its goods and the fax itself made registration for the webcast consent

### C. The Fax Was Transactional and Informational, Not Advertising.

Plaintiff's TCPA Count also fails for the independent reasons that the Fax is both a "transactional" and "informational" communication as those terms are defined by the FCC. *See* 2006 TCPA Fax Order at 25972-73. Such "transactional" or "informational" messages are expressly authorized by the FCC, the agency responsible for interpreting and implementing the TCPA. 47 U.S.C. § 151.

The Fax was designed to "facilitate, complete, or confirm" existing transactions between Defendants and their insurer-customers. Such "transactional" messages that "relate specifically to existing accounts and ongoing transactions" and that do not seek "new or additional business" are not unsolicited advertisements as a matter of law. *See* 2006 TCPA Fax Order at 25972-73; *Grind Lap Servs., Inc. v. UBM LLC*, No. 14 cv 6448, 2015 WL 6955484, at *3 (N.D. Ill. Nov. 10, 2015), *appeal dismissed* (Mar. 17, 2016) (faxed subscription renewal request was "transactional" message).

---

to receive information about the defendant's products. None of that is present here. The fax in *Arkin v. Innocutis Holdings, LLC*, 188 F. Supp. 3d 1304 (M.D. Fla. 2016), contained many hallmarks of advertising such as rebate offers and a 2-for-1 deal. In *St. Louis Heart Ctr., Inc. v. Caremark, LLC*, No. 12 cv 2151, 2013 WL 9988795 (E.D. Mo. Apr. 19, 2013), and *Physicians Healthsource, Inc. v. Salix Pharm., Inc.*, No. 15 cv 36, 2015 WL 4713266 (E.D.N.C. Aug. 7, 2015), the faxes at issue promoted the purchase of defendants' drugs. Likewise, the fax in *Brodsky v. Humana Dental Ins. Co.*, No. 10 cv 3233, 2014 WL 2780089, *7 (N.D. Ill. June 12, 2014), was a sales pitch for the defendant's insurance policies, while *Green v. Anthony Clark Int'l Ins. Brokers, Ltd.*, No. 09 cv 1541, 2009 WL 2515594 (N. D. Ill. Aug. 17, 2009), solicited the sale of insurance agencies. *Magic, Inc. v. 127 High Street, Inc.*, No. 14 cv 4344, 2014 WL 6806941 (N.D. Ill. Dec. 2, 2014), ironically enough, involved an advertisement to purchase unsolicited fax advertisements and, as such, has no relevance here. *Bais Yaakov of Spring Valley v. Alloy, Inc.*, 936 F. Supp. 2d 272 (S.D.N.Y. 2013), involved a fax promoting a television show that contained commercials.

Contrary to Plaintiff's argument, a pre-existing relationship between the sender and recipient is not necessary for a fax to be "transactional" under the FCC's definition. The FCC Order specifically states that in "order for such messages to fall outside the definition of 'unsolicited advertisement,' they must relate specifically to existing accounts and ongoing transactions." 2006 TCPA Fax Order ¶ 50. There is no requirement that the existing account and ongoing transaction must be with the recipient of the fax. For example, if a daughter decides to send a gift to her mother and ships it via Federal Express, a fax from Federal Express to the mother informing her of the delivery date and time is not an advertisement even though there is no existing account or ongoing transaction with the mother. The existing account is with the daughter. This is similar to the situation here where the existing account and ongoing transactions are between Plaintiff's patients and Defendants' clients, who are the insurers of Plaintiff's patients.

Plaintiff attempts to avoid this conclusion by relying on *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies*, No. 14 cv 5602, 2017 WL 4339788, *6 (N.D. Ill. Sep. 29, 2017), but in that case the issue was whether patients could provide indirect consent for their chiropractor to receive advertisements. Here the issue is not consent, so *Arwa* is not on point. The Fax was transactional, not advertising.

The Fax was also "informational" rather than advertising—it informed recipients of the schedule for online training sessions. Plaintiff contends that the fax does not fit within the nonexclusive list of examples in the 2006 TCPA Fax Order like newsletters, but the actual language from the order states that informational faxes are

"facsimile communications that contain only information" before proceeding to give few examples. 2006 TCPA Fax Order ¶ 53. The fax at issue here only contained information; it did not try to sell anything.

Plaintiff relies on several cases in an attempt to push the Fax outside the informational exception but none is on point. *Alpha Tec Pet, Inc. v. Lagasse,* LLC, 205 F. Supp. 3d 970, 973 (N.D. Ill. 2016), involved multiple faxes that "encourage customers to investigate the availability of further products on Defendants' website" and "encourage 'customers' to place orders[.]" Nothing like that is included in the fax at issue here. The fax in *Eden Day Spa, Inc. v. Loskove*, No. 14 cv 81340, 2015 WL 1649967 (S.D. Fla. Apr. 14, 2015), was clearly aimed at selling insurance to the recipients. The fax in *Bais Yaakov of Spring Valley v. Richmond, The Am. Int'l Univ. in London, Inc.*, No. 13 cv 4564, 2014 WL 4626230, *3 (S.D. N.Y. Sept. 16, 2014), involved an information session where "Defendant advertises the services it sells[.]" Similarly, the faxes in *Bais Yaakov of Spring Valley v. Alloy, Inc.*, 936 F. Supp. 2d 272, 282 (S.D.N.Y. 2013), advertised the defendants' programming and video services.

In contrast to these cases, the Fax at issue here advertised nothing. It merely informed Plaintiff about online training sessions. The Fax was informational, not an advertisement. The Court should dismiss Plaintiff's Count I for violation of the TCPA.

## III. THE COURT SHOULD DISMISS PLAINTIFF'S NON-TCPA COUNTS.

In Count II, Plaintiff alleges Defendants' alleged sending of an unsolicited fax advertisement amounted to "unfair acts and practices practice" in violation of ICFA § 2, 815 ILCS 505/2. If the Court agrees with Defendants that the fax was not an unsolicited

11

advertisement and did not violate the TCPA, then there is no predicate violation of any law or public policy to trigger liability under ICFA, and the Court should dismiss Count II. But even assuming the fax were a TCPA violation, the Court should still dismiss Count II because, as a majority of courts hold, receiving a one- or two-page fax does not cause a substantial injury. *See, e.g., A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*, No. 16 cv 2513, 2017 WL 2619144, at *6 (N.D. Ill. June 16, 2017) (collecting cases). Damage in the form of "paper and ink or toner" (Compl. ¶ 53) is insufficient under Illinois's doctrine of *de minimis non curat lex*. *See, e.g., Stonecrafters, Inc. v. Foxfire Printing and Packaging, Inc.* 633 F. Supp. 2d 610, 613-14 (N.D. Ill. 2009). Indeed, the court in *Orrington v. Scion Dental, Inc.*, No. 17 cv 00884, 2017 WL 5569741 (N.D. Ill. Nov. 20, 2017) ("*Orrington II*"), heavily relied on by Plaintiff for another point earlier in this proceeding, despite finding that the fax there was advertising, dismissed the plaintiff's ICFA count because the receipt of a single unsolicited fax is neither oppressive nor the cause of substantial injury. *Orrington II*, 2017 WL 5569741, at *6. This Court should likewise dismiss Plaintiff's Count II for violation of ICFA.

The Court should similarly dismiss Plaintiff's Count III for conversion for the many reasons explained in the Motion. Conversion requires an unauthorized and wrongful assumption of control by defendant over plaintiff's property. *Gen. Motors Corp. v. Douglass*, 565 N.E.2d 93, 96-97 (Ill. App. Ct. 1990). As explained above, Defendants did not violate the TCPA and, therefore, did nothing unauthorized and wrongful with respect to the Fax. Indeed, Defendants did not even assume control over Plaintiff's paper and toner as that material remained in Plaintiff's possession at all

times. *See Rossario's Fine Jewelry v. Paddock Publ'ns, Inc.*, 443 F. Supp. 2d 976 (N.D. Ill. 2006). The court in *Orrington II* dismissed Plaintiff's conversion count because "any damages from the ink, toner and paper" in connection with the fax "are plainly *de minimis*." *Orrington II*, 2017 WL 5569741, at *7; *see also G.M. Sign, Inc. v. Elm St. Chiropractic, Ltd.*, 871 F. Supp. 2d 763, 768 (N.D. Ill. 2012); *G. Neil Garrett, D.D.S., P.C. v. New Albertson's, Inc.*, No. 13 cv 7965, 2014 WL 2198242, at *4 (N.D. Ill. May 27, 2014). The overwhelming trend in cases is to dismiss such conversion claims as *de minimis*. The Court here should do the same.

Finally, the Court should dismiss Plaintiff's Count IV for trespass to chattels. Plaintiff does not offer a single case in this Circuit holding that sending a fax constitutes trespass to chattels. Indeed, the one case he cites in his Opposition, *Fidlar Techs. v. LPS Real Estate Data Sols., Inc.*, No. 13 cv 4021, 2013 WL 5973938, *9 (C.D. Ill. Nov. 8, 2013), has nothing to do with faxes. On the other hand, multiple cases have held that sending a fax does not constitute a trespass because any interference with property is *de minimis*. *Orrington II*, 2017 WL 5569741, at *8; *see also Able Home Health, LLC v. Onsite Healthcare, Inc., S.C.*, No. 16 cv 8219, 2017 WL 2152429, at *7 (N.D. Ill. May 17, 2017); *G. Neil Garrett*, 2014 WL 2198242, at *5. The Court should follow these cases and dismiss Plaintiff's Count IV for trespass to chattels.

**IV.   CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss all Counts in Plaintiff's Complaint with prejudice.

Dated: March 27, 2018                **Respectfully submitted,**

MEDSOLUTIONS, INC. and CARECORE
NATIONAL, LLC

By:   /s/ *Eric M. Roberts*

Perrie M. Weiner (*pro hac vice*)         Eric M. Roberts (ARDC # 6306839)
Edward D. Totino (*pro hac vice*)         **DLA Piper LLP (US)**
**DLA Piper LLP (US)**                    444 West Lake Street, Suite 900
2000 Avenue of the Stars                  Chicago, Illinois 60606
Suite 400 N. Tower                        312.368.2167
Los Angeles, California 90067             eric.roberts@dlapiper.com
310.595.3000
perrie.weiner@dlapiper.com
edward.totino@dlapiper.com

## Certificate of Service

I hereby certify that on March 27, 2018, I electronically filed **Defendants' Reply in Support of Their Motion to Dismiss** using the ECF System for the United States District Court for the Northern District of Illinois, 219 South Dearborn Street, Chicago, Illinois. Notice of this filing will be sent by operations of the Court's electronic filing system to all counsel of record registered on the ECF system.

      /s/ *Eric M. Roberts*
      Eric M. Roberts